Matthew C. Wagner
mwagner@dmoc.com
Scott Harrington
sharrington@dmoc.com
DISERIO MARTIN O'CONNOR & CASTIGLIONI, LLP
50 Main Street, Suite 1000
White Plains, NY 10606
(914) 684-0090 Tel
(914) 684-0590 Fax

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ DEC 0 1 2010 ★

BROOKLYN OFFICE

CV 10 - 5546

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

IRIZARRY, J.

POHORELSKY, M.J.

| | | |
|---|---|---|
| CLASSIC BRANDS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: |
| v. | ) | |
| | ) | Judge: |
| OPINION CORP. d/b/a | ) | |
| PISSEDCONSUMER.COM, | ) | Magistrate: |
| MICHAEL PODOLSKY, JOANNA SIMPSON, | ) | |
| and ALEX SYROV, | ) | **COMPLAINT WITH JURY TRIAL DEMAND** |
| | ) | |
| Defendant. | ) | |
| _____X | | |

1.     Plaintiff Classic Brands, LLC ("Classic"), is suffering irreparable harm as a result

of the extortionate scheme of defendants Opinion Corp. d/b/a PissedConsumer.com, Michael

Podolsky, Joanna Simpson and Alex Syrov (collectively, "Defendants" or "PissedConsumer").

Under this scheme, PissedConsumer encouraged and solicited internet users to post

complaints against businesses, including Classic and its DORMIA line of mattresses. Classic

recognized certain of these complaints as disgruntled former employees and/or fraudulent

fact patterns. After Classic contacted PissedConsumer to remove these complaints,

PissedConsumer only offered to enroll Classic in its "Reputation Management" program in

1

exchange for substantial sums of money to PissedConsumer – but even then only if Classic agreed not to sue PissedConsumer or reveal to others details about: the arrangement, Classic itself, and PissedConsumer's "custom reputation management" services. The very obvious and inextricable conclusion that can be drawn from the offer is that PissedConsumer would cooperate with Classic in exchange for payment of substantial sums of money. At the same time, PissedConsumer also uses Classic's DORMIA trademark in metadata and as keywords in pay-per-click ad campaigns, and derives profit from them, to the detriment of Classic.

2.      On September 27, 2010, Ascentive, LLC filed suit against Defendants in this District (the "Ascentive Suit"). The Ascentive Suit was assigned to Senior Judge I. Leo Glasser, Chief Magistrate Judge Steven M. Gold, and given Case Number 1:10-CV-04433-ILG-SMG. The allegations in the Ascentive Suit support the claims made in this complaint. The Ascentive Suit is "related" to this case pursuant to Division of Business Rule 50.3.1, and LR 15, because the similarity of facts and legal issues would result in a substantial saving of judicial resources if both cases are assigned to the same judge and magistrate judge.

3.      PissedConsumer's practices constitute (1) racketeering under the civil Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d), based on predicate acts of extortion; (2) trademark infringement, unfair competition and false advertising under the Lanham Act, 15 U.S.C. § 1051 et seq.; (3) common law trademark infringement, unfair competition and false advertising; (4) intentional interference with contractual relations and prospective contractual relations; and (5) unjust enrichment.

I.      **PARTIES**

2

4.     Classic is a limited liability company organized and existing under the laws of Delaware with its principal place of business at 8214 Wellmoor Court, Jessup, Maryland, 20794.

5.     Defendant Opinion Corp. d/b/a PissedConsumer.com ("Opinion Corp") is a New York corporation. Upon information and belief, Opinion Corp.'s principal place of business is at 1204 Avenue U, Suite 1080 Brooklyn, NY, 11229.

6.     Upon information and belief, defendant Michael Podolsky is the chief executive officer of Opinion Corp. and an individual residing at 130 Combs Avenue, Woodmere, New York, 11598. Mr. Podolsky controls and operates the PissedConsumer website, had an email exchange with Classic and, as described below, committed multiple predicate acts in violation of the RICO statute.

7.     Upon information and belief, defendant Alex Syrov is the president of Opinion Corp. and an individual residing at 1856 13th Street, Apartment 2B, Brooklyn, NY, 11229. Mr. Syrov controls and operates the PissedConsumer website and, as described below, committed multiple predicate acts in violation of the RICO statute.

8.     Upon information and belief, defendant Joanna Clark Simpson is Opinion Corp.'s marketing director and an individual residing in the state of New York. Ms. Simpson authored and published press releases on Opinion Corp.'s behalf. Ms. Simpson controls and operates the PissedConsumer website and, as described below, committed multiple predicate acts in violation of the RICO statute.

9.     Upon information and belief, Ms. Simpson also controls and operates the Twitter accounts http://twitter.com/consumer_press and http://twitter.com/pissedconsumer.

3

10. Upon information and belief, defendants Opinion Corp., Joanna Simpson, Alex Syrov, and Michael Podolsky advertise, solicit clients, and conduct substantial amounts of business in the State of New York.

## II. JURISDICTION AND VENUE

11. This complaint arises under the Lanham Act, 15 U.S.C. § 1125 and 15 U.S.C. § 1114, and the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 (c) and (d).

12. This Court has federal question jurisdiction over these claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and 1338(b). This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because those claims are so closely related to the federal claims brought in this complaint as to form part of the same case or controversy.

13. Defendants are citizens of New York and subject to personal jurisdiction in New York.

14. Venue is proper in this district under 28 U.S.C. § 1391 (b)(1) because all defendants reside in the State of New York and in this district.

## III. FACTUAL BACKGROUND

### A. Classic's Intellectual Property and Products

15. Classic is a leading manufacturer of specialty sleep products, among which are its DORMIA brand mattresses.

16. Classic has developed a reputation as an industry innovator and leader in creating quality sleep systems. Classic products have been featured in a number of outlets

4

including the Wall Street Journal website and CBSNews.com. *See* Articles, attached as Exhibit 1.

17.     Classic owns U.S. Trademark Registration No. 2,891,848 for DORMIA, issued October 5, 2004, for the following goods and services: mattresses, pillows, mattress pads, back care pillows and cushions, adjustable bed frames; and retail store and computerized online retail services in the field of mattresses, pillows, and other sleep products. Classic has used DORMIA as a trademark in connection with these goods and services since at least December of 2000. *See* TESS Record, attached as Exhibit 2.

18.     Classic's DORMIA trademark is inherently distinctive.

19.     Classic operates a number of websites on which its DORMIA trademark is used to promote goods and services including sleep products and where directions are provided to retail locations, including www.dormia.com and http://www.dormiamattress.com/.

**B.     PissedConsumer Falsely Claims to Function as an Unbiased Consumer Advocacy Group Through Its Operation of PissedConsumer.com**

20.     PissedConsumer owns, operates and maintains the website located at www.pissedconsumer.com.

21.     PissedConsumer invites consumers to post public complaints on its website www.pissedconsumer.com from their personal computers and mobile phones.

22.     PissedConsumer publishes a "PissedConsumer" iPhone application and advertises heavily on Facebook.

23.     PissedConsumer has published numerous press releases claiming that it is an unbiased "premier consumer advocacy group." Upon information and belief, these press

releases were authored by Opinion Corp. and defendant Joanna Clark Simpson. *See* Press Releases, attached as Exhibit 3.

24.     PissedConsumer advertises itself to the public as a consumer review website that allows consumers to "make better choices" between competing products and gives consumers an "empowering" and "unbiased" view of companies and products.

25.     PissedConsumer states: "Share your ***unbiased*** consumer review for the product or service with other customers.  Are you ready to say: I am pissed?" *Id.* (emphasis added).

26.     As explained more fully below, however, PissedConsumer's representation that it functions as an unbiased consumer advocacy group is false.

27.     PissedConsumer encourages consumers to create negative postings on the PissedConsumer website, displays those postings as prominently on the internet as possible using search engine optimization techniques, and relates those postings as closely as possible to the companies' brand names by using trademarks in metadata and as keywords. PissedConsumer has an incentive to engage in these practices because they induce the victims of the "complaints" to pay PissedConsumer the substantial sums of money it demands from the victims on an ongoing basis and leverages the content created through its site to generate ad revenue.

28.     If the victims of the complaints pay PissedConsumer in accordance with its exorbitant demands, PissedConsumer will remove, recategorize, hide and/or filter existing and new complaints submitted by third parties for publication on its website.  PissedConsumer offers to act as a "gatekeeper" for these companies, ensuring that new negative complaints

6

are not posted by consumers and existing negative complaints on its website are hidden, removed, or turned into positive testimonials.

29.     Moreover, PissedConsumer makes no attempt to discern which complaints are legitimate and which are fake or false.

30.     Any anonymous computer user can post a complaint on PissedConsumer's website.

31.     Unless the victim of the false, negative complaint pays PissedConsumer the exorbitant sums it demands, PissedConsumer will not require the author of a complaint to reveal his or her true identity or contact information, nor will it even provide the IP address of the user for contact.

32.     "Complaints" on PissedConsumer's website may be, and often are, completely false and defamatory.

33.     Any anonymous computer user can post a complaint.  PissedConsumer refuses to reveal who has posted the complaints.  Accordingly, Plaintiff cannot determine whether, instead of being posted by actual consumers of the products, the complaints may instead be posted by PissedConsumer itself, or by competitors of the target company that are simply seeking to harm that target company's reputation in order to increase their own sales.

C.     **PissedConsumer's Use of Classic's Trademarks in PissedConsumer's Website Text, Subdomains and Metadata.**

34.     PissedConsumer creates "subdomains," or named domains that are part of its larger "PissedConsumer.com" domain name, at www.pissedconsumer.com.

35.     PissedConsumer created two "subdomains" associated with Classic's DORMIA brand, http://dormia-mattress.pissedconsumer.com, and  http://dormia.pissedconsumer.com

which redirects the visitor to http://dormia-mattress.pissedconsumer.com ("DORMIA subdomains.")

36.     PissedConsumer uses the trademark "DORMIA" in connection with the DORMIA subdomains. Classic's trademark is displayed to consumers visiting PissedConsumer's website in the text displayed at http://dormia.pissedconsumer.com and http://dormia-mattress.pissedconsumer.com and in the subdomain addresses themselves. *See* Printouts from PissedConsumer.com, attached as Exhibit 4.

37.     PissedConsumer also uses Classic's DORMIA trademark in the metadata associated with its website.[1]

38.     Upon information and belief, defendant Alex Syrov controls the creation of subdomains and domains related to PissedConsumer's website and the manner in which Classic's trademark is used in connection with those subdomains and domains.

39.     PissedConsumer's website contains descriptions of Classic and its DORMIA brand and its products using content generated by and posted by PissedConsumer. For example, PissedConsumer's website states: "Dormia, Inc. is a beeding [sic] and mattress provider. It is based in Jessup, Maryland. It is the leading specialty sleep mattress retailer in the United States. The company was established after the acquisition of Classic Corporation by Advanced Comfort, Inc in 1991. At the present time Dormia manufactures and sells modern memory foam mattresses. According to the company, during the manufacturing of the quality sleep systems only the best materials are used. There is number [sic]

_____

[1] Metadata is data associated with a website that is written in HTML code and read by search engines that index the website. Computer users using Internet Explorer can view a website's metadata if they select "View" and "Source" in the menu bar when visiting the website. The metadata at dormia-mattress.pissedconsumer.com, for example, repeatedly includes the trademark "DORMIA." *See* MetaData Printout (excerpted and highlighted), attached as Exhibit 5.

of <u>Dormia</u> sleep shops and furniture stores nationwide. The customers of Dormia, Inc. can purchase the mattresses at lower prices buying directly from the manufacturer." Ex. 4.

40.     Alongside this description of Classic and its DORMIA brand products, PissedConsumer displays numerous advertisements for third parties' products and services, including but not limited to competing mattress manufacturers. Ex. 4. These ads appear to be part of Google's advertising program.

41.     Many of these third-party advertisements promote the sale of products from Classic's direct competitors. *Id.*

42.     The advertisements are displayed through Google's "AdWords" advertising program, in which Google allows PissedConsumer to profit from this display of third-party advertisements on its website every time a consumer "clicks through" to one of the advertisers.

43.     PissedConsumer's webpages feature so many advertisements of Classic's competitors, displayed in a cluttered fashion and used in connection with Classic's trademarks, that consumers seeking Classic's products are likely to be redirected by PissedConsumer to the websites of Classic's competitors.

44.     The Google AdWords advertising program compensates PissedConsumer based on the number of clicks on the advertisements on its website and therefore PissedConsumer profits from this type of consumer confusion in the form of click-through fees.

45.     Although there are also comments and reviews of Classic's products, purportedly posted by anonymous third parties, these comments and reviews are at the

bottom of the webpages. The focus of PissedConsumer's webpages is the third-party advertisements. *Id.*

**D. Consumers Are Further Misled By PissedConsumer's Improper "Search Engine Optimization" Tactics**

46. When a consumer searches on Google's search engine for Classic's DORMIA trademark, PissedConsumer's website "dormia-mattress.PissedConsumer.com" often appears in the first page of websites listed in Google's organic search results. *See* Google Search Results, attached as Exhibit 6. A search for "Dormia mattress" yields a result where PissedConsumer's site appears even higher in the results. This is despite the fact that PissedConsumer's website offers little to no content about Classic and its products.

47. This high Google ranking results from PissedConsumer's practice of "SEO" or "search engine optimization," which refers to the process through which a company improves its website's visibility or ranking in search engines' "organic" or "natural" or unpaid search results.

48. PissedConsumer employs various deceptive SEO practices to be ranked in the first two search results on Google, and equally prominently by other search engines such as Bing and Yahoo! These deceptive practices include:

A. Buying hundreds of domain names and using them to create links to PissedConsumer's website, so that PissedConsumer's website appears prominently in search engine search results despite the fact that these inbound links have nothing to do with public interest or relevancy. *See* Articles describing PissedConsumer's use of "black hat" SEO practices and "linkfarm schemes." Exhibit 7.

B. Creating numerous subdomains that interlink between each other, also affecting search engines' evaluation of PissedConsumer's "relevancy." *Id.*

C. Making excessive use of brand name "keywords" in website text, metadata and subdomains, in a manner that causes PissedConsumer's webpages to appear more relevant to searches for those brand names even though it is unrelated. *Id.*

49. PissedConsumer's recorded website traffic dropped drastically in 2009, after reports surfaced on the internet that PissedConsumer was employing deceptive or "black hat" SEO practices and a Google representative responded to those reports. *See* Ex. 3 (Information re: PissedConsumer.com showing plummeting website traffic) and Ex. 7 (online articles re: Google's response). Upon information and belief, Google temporarily blocked PissedConsumer.com from its search listings. *Id.* PissedConsumer's websites, however, have again risen to prominence in Google's rankings. *Id.*

50. In addition to appearing prominently in the search results for "Dormia" and "Dormia mattress" on Google, PissedConsumer appears as high as second in the results for the same search terms on other leading search engines, such as Bing and Yahoo! *See* Bing and Yahoo! Search results printouts, attached as Exhibit 8.

**E.  PissedConsumer's Extortion**

51. Around June 2010, false and outdated "complaints" about Dormia on PissedConsumer's website were brought to Classic's attention. Classic became very concerned about the impact these postings are having on Classic's sales and reputation.

52. PissedConsumer's website states: "In an effort to assist companies and individuals with their online reputation, Pissed Consumer is offering premium reputation management services. Our services allow you to tell your side of the story and address the complaints received from consumers." Ex. 4.

53. The website invited Classic to contact PissedConsumer for a "custom quote"

for its "reputation management services." Ex. 4.

54.     Upon information and belief, PissedConsumer's services constituted a quid pro quo where PissedConsumer would remove negative complaints in exchange for payment and Classic's participation in its "reputation management program."

55.     PissedConsumer demanded that Classic sign a "non-disclosure agreement" before PissedConsumer would provide Classic with the details and price of its "reputation management program."*See* Confidentiality/Nondisclosure Agreement, attached as Exhibit 9.

56.     The non-disclosure agreement contains a covenant not to sue, and acceptance of the non-disclosure agreement is a pre-requisite to obtain a "custom quote" which would be the fee charged by PissedConsumer for participation in the "reputation management program."

57.     PissedConsumer made clear to Classic that absent these payments and Classic's participation in its "reputation management program," the negative content posted at PissedConsumer.com would not be removed and changes would not be made.

58.     PissedConsumer threatened Classic that negative content about Classic and its products would continue to be prominently displayed to consumers, absent payment by Classic to PissedConsumer. The display of this negative content is threatened to continue into the future absent payment.

59.     Upon information and belief, PissedConsumer has similarly threatened and continues to threaten other companies in positions similar to Classic, as other companies' "subdomains" at PissedConsumer.com contain similar negative content and link to the same "Reputation Management" advertisement and "price list" by PissedConsumer.

12

60.     PissedConsumer's extortionary threats are of indefinite duration and have become a regular way that PissedConsumer conducts business.

61.     Upon information and belief, PissedConsumer has engaged in these business practices with numerous companies similar to Classic since the launch of its website in 2007.

62.     Companies and consumers have posted commentary online describing PissedConsumer's conduct related to other companies as "extortion" and noting that "complaints" about companies participating in PissedConsumer's "reputation management program" have been suddenly removed from PissedConsumer's website.  Ex. 7.

63.     One commentator on PissedConsumer's website states: "It [is] pretty strange how all of a sudden most of the complaints against Davison Inventegration posted by 'Ex Employees' seemed to have been pulled from Pissed Consumer's website.  Hmmm.  From what I hear this is the same thing Davidson did with Rip Off Report.  Paid them off so they pulled the postings that did the most damages and most likely had the most credibility...I am disappointed at Pissed Consumer." *See* Exhibit 10.

64.     Prior to the final submission of a complaint through their website, PissedConsumer offers the option to "promote" your complaint to "preferred positioning" on the site in return for a "small fee." For the purpose of testing PissedConsumer's claim that they never remove complaints from the website, an individual on behalf of classic created an account on the website, wrote a review of PissedConsumer, and paid $5.99 to ensure that it would receive "preferred positioning" on the site on or about November 6, 2010. The review was removed, the account deleted, and the payment refunded on the very same day, all without comment from PissedConsumer. *See* Exhibit 11.

65.     Upon information and belief, PissedConsumer has exercised editorial control with regard to other posted complaints as well. As a result, PissedContent does not qualify for immunity under § 230 of the Communications Decency Act of 1996.

**F.     Classic's Unsuccessful Attempts to Resolve This Dispute with PissedConsumer**

66.     Classic contacted PissedConsumer through counsel on October 7, 2010, describing its potential claims and requesting that the webpage Dormia-mattress.PissedConsumer.com be removed.

67.     On October 8, 2010, PissedConsumer briefly responded through counsel that it believed Classic's claims had no merit and threatened to seek Rule 11 sanctions against Classic if a complaint was filed.  PissedConsumer claimed that it never offered to remove negative consumer complaints and falsely stated it does not maintain editorial control over postings on its website.

**IV.     CLAIM 1 – VIOLATION OF 18 U.S.C. § 1962(c) – CIVIL RICO**

68.     Classic incorporates by reference each and every allegation of the paragraphs above.

69.     Defendants Opinion Corp., Mr. Podolsky, Ms. Simpson and Mr. Syrov  are "persons" as defined under 18 U.S.C. § 1961(3) and 18 U.S.C. § 1962(c).

70.     At all relevant times, Defendants were employed by and/or affiliated with the entity or association of persons and entities operating and supporting the operation of the website PissedConsumer.com (the "PissedConsumer Enterprise").

71.     The PissedConsumer Enterprise was conducted through the unlawful actions of Defendants, other PissedConsumer agents and/or employees, including PissedConsumer's

legal counsel, the search engine(s) listing PissedConsumer's website, the advertisers on PissedConsumer's website, and other persons and entities.

72. The PissedConsumer Enterprise constitutes an "enterprise" or "association in fact enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), that furthers the Defendants' common purpose of committing acts of commercial bribery and extortion.

73. Opinion Corp. and the PissedConsumer Enterprise are used to sell goods and services in interstate commerce and are engaged in activities that affected interstate commerce.

74. Defendants were and are employed by and/or associated with Opinion Corp. and the PissedConsumer Enterprise. They have control over Opinion Corp. and the PissedConsumer Enterprise such that they conduct and participate in the conduct, either directly or indirectly, of the operation and management of Opinion Corp. and the PissedConsumer Enterprise.

75. Defendants own, operate and/or control the website located at PissedConsumer.com and numerous other domains affiliated with the PissedConsumer.com domain and used to increase the search engine ranking of PissedConsumer.com.

76. Defendants engaged in a pattern of racketeering activity consisting of at least two predicate acts of racketeering by each Defendant. Defendants operate the PissedConsumer website through their ongoing conduct and Defendants' predicate acts of racketeering are part of Defendants' regular way of doing business.

77. Upon information and belief, Defendants have operated the PissedConsumer.com website in connection with a scheme and conspiracy to extort and solicit

money from the victims of the website (described by PissedConsumer as its "reputation management program") since 2007. Defendants committed the described acts of racketeering continuously since 2007.

78.     Defendants took the actions that constitute a pattern of racketeering activity for the same purpose – to extract money from the victims of the scheme (the companies that are the victims of "complaints" posted at PissedConsumer.com) through extortion.

79.     As the victims, participants and methods of commission that comprised Defendants' pattern of racketeering were the same or similar, these acts of racketeering constitute a continuous and related pattern or racketeering as defined in 18 U.S.C. 1961(1) and (5).

80.     Defendants advertised, solicited clients, conducted substantial amounts of business and committed acts of commercial bribery and extortion in the State of Maryland, where Classic is located, and in other states.

81.     Defendants' acts constituting "racketeering activity" under 18 U.S.C. 1961 (1) included acts and threats involving extortion punishable and chargeable by imprisonment for more than one year under Maryland and federal law.

A.      **Predicate Acts of Extortion Chargeable Under State Law**

82.     Maryland has criminalized extortion under Md. Code Ann. Crim. Law § 3-701(b), which states:

> A person may not obtain, attempt to obtain, or conspire to obtain money, property, labor, services, or anything of value from another person with the person's consent, if the consent is induced by wrongful use of actual or threatened:
>
> (1) force or violence;

16

(2) economic injury; or

(3) destruction, concealment, removal, confiscation, or possession of any immigration or government identification document with intent to harm the immigration status of another person.

83.     Defendants conspired to extort and attempted to extort money from Classic in violation of Maryland criminal law.  These acts constituted "a pattern of racketeering activity" under the RICO statute, as defined and explained above.

84.     Defendant Podolsky and his company Opinion Corp. committed acts of extortion and attempted extortion, including but not limited to: (1) threatening Classic on multiple occasions with the fear of continuing economic loss resulting from PissedConsumer's wrongful conduct, in order to obtain money from Classic; (2) encouraging, controlling and approving negative website content to cause ongoing economic loss to Classic and therefore increase the chances of obtaining money from Classic; (3) continuously inviting "victims" of PissedConsumer's website to stop the economic loss caused by PissedConsumer by making repeated and ongoing payments to PissedConsumer; and (4) requiring that a non-disclosure agreement with a covenant not to sue be signed to facilitate PissedConsumer's extortion of Classic and other companies.

85.     Upon information and belief, defendant Simpson committed acts of extortion and attempted extortion, including but not limited to: (1) encouraging, controlling and approving negative website content to cause and threaten economic loss to Classic and other companies, in order to obtain money from Classic and others; and (2) continuously inviting "victims" of PissedConsumer's website to stop the economic loss caused by PissedConsumer by making repeated and ongoing payments to PissedConsumer.

17

86.     Upon information and belief, defendant Syrov committed acts of extortion and attempted extortion, including but not limited to: (1) encouraging, controlling and approving negative website content to cause and threaten economic loss to Classic and other companies, in order to obtain money from Classic and others; and (2) continuously inviting "victims" of PissedConsumer's website to stop the economic loss caused by PissedConsumer by making repeated and ongoing payments to PissedConsumer.

87.     Defendants knowingly assisted each other and each others' acts of extortion and attempted extortion in conducting the PissedConsumer Enterprise.

**B.     Predicate Acts of Extortion Chargeable Under the Hobbs Act**

88.     Defendants' acts also constitute extortion in violation of the Hobbs Act, 18 U.S.C. 1951, which states:

> Whoever in anyway or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

89.     "Extortion" means "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." *Id*. "Fear" includes threatened fear of economic loss.

90.     Defendants conspired to extort and attempted to extort money from Classic in violation of the Hobbs Act.  These acts also constituted "a pattern of racketeering activity" under the RICO statute, as defined and explained above.

91.     Defendant Podolsky and his company Opinion Corp. committed acts of extortion and attempted extortion, including but not limited to: (1) threatening Classic on multiple occasions with the fear of continuing economic loss resulting from PissedConsumer's wrongful conduct, in order to obtain money from Classic; (2) encouraging, controlling and approving negative website content to cause ongoing economic loss to Classic and therefore increase the chances of obtaining money from Classic; (3) continuously inviting "victims" of PissedConsumer's website to stop the economic loss caused by PissedConsumer by making repeated and ongoing payments to PissedConsumer; and (4) requiring that a non-disclosure agreement with a covenant not to sue be signed to facilitate PissedConsumer's extortion of Classic and other companies.

92.     Upon information and belief, defendant Simpson committed acts of extortion and attempted extortion, including but not limited to: (1) encouraging, controlling and approving negative website content to cause and threaten economic loss to Classic and other companies, in order to obtain money from Classic and others; and (2) continuously inviting "victims" of PissedConsumer's website to stop the economic loss caused by PissedConsumer by making repeated and ongoing payments to PissedConsumer.

93.     Upon information and belief, defendant Syrov committed acts of extortion and attempted extortion, including but not limited to: (1) encouraging, controlling and approving negative website content to cause and threaten economic loss to Classic and other companies, in order to obtain money from Classic and others; and (2) continuously inviting "victims" of PissedConsumer's website to stop the economic loss caused by PissedConsumer by making repeated and ongoing payments to PissedConsumer.

94.     Defendants knowingly assisted each other and each others' acts of extortion and attempted extortion in conducting the PissedConsumer Enterprise.

## C.     Direct Injuries to Classic

95.     Classic has experienced and is experiencing ongoing economic losses in the form of lost consumer sales and tarnishment to its reputation with consumers, due to Defendants' conduct.

96.     The "complaints" posted on PissedConsumer's website falsely characterize Classic's products as faulty, Classic's business practices as fraudulent, and Classic's customer service as unacceptably poor.

97.     Classic also was forced to engage in a series of negotiations with PissedConsumer through counsel, who dragged on a pre-textual exchange for weeks. Classic was required to spend employee time addressing these negotiations and to consult legal counsel in connection with these discussions, all of which also resulted in further economic loss to Classic.

98.     Classic was one of the direct and intended victims of the PissedConsumer Enterprise, Defendants' pattern of racketeering, and Defendants' violations of the Hobbs Act and Maryland's criminal statute prohibiting extortion.

99.     As a direct result of the conduct described above, Classic lost valuable business and property interests. Classic lost not only sales revenues as a result of the negative and defamatory content posted at PissedConsumer.com, but also the time and money required to respond to PissedConsumer.

100.    PissedConsumer implied that the negative and defamatory content posted at PissedConsumer.com would only cease causing economic harm to Classic if Classic participated in PissedConsumer's "reputation management program" and gave in to PissedConsumer's demand that Classic pay PissedConsumer.

101.    Classic has been injured in its business and property by reason of the foregoing violations of 18 U.S.C. § 1962(c) in an amount to be determined at trial. By reason of the foregoing acts, Classic is entitled to treble damages under the RICO statute, as well as other relief which is necessary and proper, including reasonable attorneys' fees and costs.

102.    Moreover, Classic is currently suffering irreparable injury as a result of Defendants' continued operation of the PissedConsumer.com website. Classic's remedy at law is inadequate to compensate it for the damage currently being inflicted by Defendants' operation of the subdomains Dormia-mattress.PissedConsumer.com and Dormia.PissedConsumer.com, and therefore Classic also requests that PissedConsumer's operation of those subdomains (and any other subdomains using Classic's trademarks at PissedConsumer.com) be preliminarily and permanently enjoined.

**V.    CLAIM 2 – VIOLATION OF 18 U.S.C. § 1962(d) – RICO CONSPIRACY**

103.    Classic incorporates by reference each and every allegation of the paragraphs above.

104.    Defendants have conspired to violate 18 U.S.C. § 1962(c) by agreeing to conduct an enterprise affecting interstate commerce, directly or indirectly, through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d).

21

105.    Classic has been injured in its business and property by reason of the foregoing violations of 18 U.S.C. § 1962(d) in an amount to be determined at trial.  By reason of the foregoing acts, Classic is entitled to treble damages under the RICO statute, as well as other relief which is necessary and proper, including reasonable attorneys' fees and costs.

106.    Moreover, Classic is currently suffering irreparable injury as a result of Defendants' continued operation of the PissedConsumer.com website.  Classic's remedy at law is inadequate to compensate it for the damage currently being inflicted by Defendants' operation of the subdomains Dormia-mattress.PissedConsumer.com and Dormia.PissedConsumer.com, and therefore Classic also requests that PissedConsumer's operation of those subdomains (and any other subdomains using Classic's trademarks at PissedConsumer.com) be preliminarily enjoined.

## VI.    CLAIM 3 – VIOLATIONS OF 15 U.S.C. § 1114, 1125(a) - THE LANHAM ACT

107.    Classic incorporates by reference each and every allegation of the paragraphs above.

108.    Classic's DORMIA trademark is a valid and distinctive federally registered trademark for, among other things, mattresses, pillows, mattress pads, back care pillows and cushions, adjustable bed frames; and retail store and computerized online retail services in the field of mattresses, pillows, and other sleep products. The DORMIA trademark is entitled to protection under the Lanham Act.

109.    PissedConsumer uses Classic's DORMIA trademark in commerce and in connection with advertisements for sleep products displayed on PissedConsumer's website.

110. PissedConsumer profits from click-through fees generated by its display of third-party advertisements and its use of Classic's trademarks at Dormia-mattress.PissedConsumer.com and Dormia.PissedConsumer.com.

111. Classic did not consent directly or indirectly to PissedConsumer's use of Classic's trademarks in any manner and Classic expressed its strong written objection to PissedConsumer's unauthorized use of Classic's trademarks.

112. PissedConsumer's unauthorized and willful use of Classic's trademarks in connection with the display of third-party advertisements, including advertisements for the products of Classic's competitors, constitutes a use in commerce that infringes Classic's exclusive rights in its federally registered marks and is likely to cause confusion, mistake or deception as to the source of the goods and services offered.

113. Such actions are also likely to cause confusion as to whether Classic is sponsoring, has authorized or is somehow affiliated with the products advertised.

114. Consumers are likely to be initially confused into believing that clicking on advertisements displayed on PissedConsumer's website will lead to Classic's websites and Classic's sleep products. Classic's products and the products offered on the third-party websites are related, as are the trade channels and purchasers for such products.

115. Even after accessing the websites advertised at PissedConsumer.com, consumers are likely to be confused into believing that those websites and any sleep products they contain are associated with, developed by, or otherwise affiliated with Classic.

116. PissedConsumer's unauthorized and willful use of Classic's registered trademarks constitutes trademark infringement, unfair competition and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1114 and 1125(a).

117. Classic has been injured in its business and property by reason of the foregoing Lanham Act violations in an amount to be determined at trial.

118. Moreover, Classic is currently suffering irreparable injury as a result of Defendants' continued use of Classic's trademarks in connection with the PissedConsumer.com website. PissedConsumer's infringement, unfair competition, and false designation of origin has caused and, unless restrained by this Court, will continue to cause Classic irreparable injury.

119. Classic's remedy at law is inadequate to compensate it for the damage currently being inflicted by Defendants' operation of the subdomains Dormia-mattress.PissedConsumer.com and Dormia.PissedConsumer.com, and therefore Classic also requests that PissedConsumer's operation of those subdomains (and any other subdomains using Classic's trademarks at PissedConsumer.com) be preliminarily and permanently enjoined.

## VII. CLAIM 4 – COMMON LAW TRADEMARK INFRINGEMENT, UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN

120. Classic incorporates by reference each and every allegation of the paragraphs above.

121. Classic owns protected and/or protectable common law trademark rights in its distinct and valuable marks.

24

122. Classic uses its trademarks in commerce and in conjunction with its legitimate business operations.

123. PissedConsumer's unlawful and willful conduct is likely to create confusion concerning the origin of the goods or services advertised, and constitutes trademark infringement, unfair competition and false designation of origin in violation of Classic's trademark rights at common law.

124. PissedConsumer's common law trademark violations have directly and proximately caused and continue to cause injury and damage to Classic by, among other things, causing Classic to lose control of its business reputation, causing confusion, diverting customers, sales, and otherwise causing significant commercial loss.

125. As a result of PissedConsumer's actions, Classic has suffered, and will continue to suffer, irreparable harm and Classic has no adequate remedy at law.

126. PissedConsumer's violations of law have damaged Classic in an amount to be determined at trial.

127. Classic requests that PissedConsumer's operation of subdomains containing and using Classic's trademarks at PissedConsumer.com be preliminarily and permanently enjoined.

VIII. **CLAIM 5 – INTERFERENCE WITH CONTRACTUAL AND PROSPECTIVE CONTRACTUAL RELATIONS**

128. Classic incorporates by reference each and every allegation of the paragraphs above.

129. Classic derives revenues from the sale of its DORMIA brand sleep products to consumers in an online e-commerce environment and in bricks and mortar retail establishments.

130. Classic has contractual and prospective contractual relationships with retail outlets and prospective consumers that search for Classic's brand names on search engines, view the prominent display of PissedConsumer's Dormia subdomain in the search results, and/or visit the PissedConsumer.com website.

131. PissedConsumer's tortious interference with Classic's contractual and prospective contractual relationships with these consumers and retail outlets has been wrongful and intentional, as described above. There is no privilege or justification for PissedConsumer's conduct.

132. As a direct and proximate result of PissedConsumer's trademark infringement, false advertising and unfair competition, consumers are confused into visiting the websites of Classic's competitors when searching for Classic's products by brand name, and retail outlets have declined to carry Classic's DORMIA brand products.

133. As a result of PissedConsumer's conduct as alleged herein the consumers and retail outlets are also exposed repeatedly to false, defamatory, negative and outdated "complaints" about Classic posted on the PissedConsumer.com website and as shown in the search engine results.

134. As a result of PissedConsumer's conduct, Classic has been, and absent injunctive relief will continue to be, irreparably harmed by PissedConsumer's actions.

135. Classic has no adequate remedy at law for the foregoing wrongful conduct.

136. PissedConsumer's intentional interference with prospective contractual relations has damaged Classic in an amount to be determined at trial.

26

137. Classic requests that PissedConsumer's operation of subdomains containing and using Classic's trademarks at PissedConsumer.com be preliminarily and permanently enjoined.

## IX.    CLAIM 6 – UNJUST ENRICHMENT

138. Classic incorporates by reference each and every allegation of the paragraphs above.

139. Classic has a right to recover from PissedConsumer based on PissedConsumer's unjust enrichment resulting from the actions of PissedConsumer described above.

140. PissedConsumer has knowingly benefited from its use of Classic's trademarks in conjunction with its advertising programs and has retained the benefits of its use of Classic's trademarks, which use is in violation of Classic's rights and causes harm to Classic, as set forth above.

141. PissedConsumer used Classic's trademarks to improve the prominence of its website in search engine listings (for example, its "Google ranking"), to increase consumer traffic to its website, and to profit from that consumer traffic.

142. Under these circumstances, as set forth in the complaint, it would be unjust for PissedConsumer.com to retain the benefits conferred upon it by its use of Classic's trademarks without payment to Classic.

## X.    PRAYER FOR RELIEF

WHEREFORE, plaintiff Classic Brands, LLC, asks for an order and judgment against defendants Opinion Corp. d/b/a PissedConsumer.com, Michael Podolsky, Joanna Clark Simpson and Alex Syrov:

a. Awarding Classic preliminary and permanent injunctive relief enjoining Opinion Corp. and its officers, partners, agents, subcontractors, servants, employees, subsidiaries and related companies or entities, and all others acting in concert with it, from using Classic's DORMIA trademark, or terms confusingly similar, in commerce and in connection with the PissedConsumer.com website;

b. Awarding Classic actual, compensatory and punitive damages to the full extent allowed by law;

c. Awarding Classic costs and attorneys' fees to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117 and the RICO statute, 18 U.S.C. § 1964.

d. Awarding Classic actual and trebled damages to the full extent provided by 15 U.S.C. § 1117 and 18 U.S.C. § 1964, in an amount to be determined at trial.

e. Granting such other relief as this Court deems just and equitable.

## XI.    JURY TRIAL DEMANDED

Plaintiff Classic Brands, LLC, requests a jury trial on all claims.

Respectfully submitted,
DISERIO MARTIN O'CONNOR & CASTIGLIONI LLP

By: _____

Matthew C. Wagner (MW9432)
mwagner@dmoc.com

Scott Harrington (SH0588)
sharrington@dmoc.com

Diserio Martin O'Connor & Castiglioni LLP
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: 914-684-0090

Dated:  November 30, 2010